# **<u>EXHIBIT A</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK GIORDANO, *et al.*** | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 23-1614** |
| **v.** | : | |
| | : | |
| **ANDREW HOHNS, *et al.*** | : | |
| *Defendants* | : | |

## ORDER

    **AND NOW**, this 2nd day of February 2024, upon consideration of the United States' (the "Government") *notice of substitution, motion to dismiss, and motion to stay discovery*, (ECF 3), Plaintiffs' response in opposition, (ECF 6), the Government's reply, (ECF 8), Plaintiffs' sur-reply, (ECF 11), and the allegations in the complaint, (ECF 1-1), it is hereby **ORDERED**, for the reasons set forth in the accompanying Memorandum Opinion, that:

1. The Government's substitution for the named individual defendants is proper. Accordingly, Defendants Hohns, Griffin, and Swanson are **DISMISSED**, with prejudice, from this action, and the United States of America is substituted as the named Defendant in this matter;

2. The Government's motion to dismiss is **GRANTED** and, pursuant to Federal Rule of Civil Procedure 12(b)(1), this matter is **DISMISSED**, in its entirety, for lack of subject-matter jurisdiction; and

3. The Government's motion to stay discovery is **DENIED**, as moot.

                                   **BY THE COURT:**

                                   */s/ Nitza I. Quiñones Alejandro*
                                   **NITZA I. QUIÑONES ALEJANDRO**
                                   *Judge, United States District Court*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK GIORDANO,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 23-1614** |
| **v.** | : | |
| | : | |
| **ANDREW HOHNS,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                   FEBRUARY 2, 2024

# MEMORANDUM OPINION

## INTRODUCTION

The primary issue before the Court is whether the United States (the "Government") is the proper Defendant in the action brought by Plaintiffs Frank Giordano ("Plaintiff Giordano") and Daniel M. DiLella's ("Plaintiff DiLella") (collectively, "Plaintiffs") for defamation, false light, tortious interference, and civil conspiracy.[1] The Government removed this action from the Philadelphia Court of Common Pleas, (ECF 1), and included a Certification of Scope of Employment issued pursuant to 28 U.S.C. § 2679(d)(2).[2] Under this provision, upon certification,

---

[1] Plaintiffs originally filed this action in state court against Defendants Andrew Hohns ("Defendant Hohns"), Noah Griffin ("Defendant Griffin"), and James Swanson ("Defendant Swanson") (collectively, "Defendants").

[2] Section 2679(d)(2) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the

the United States of America became the party defendant for the individuals named defendants in this action, who are all federal employees.[3]  Plaintiffs contest the Government's substitution on three grounds:  (1) the Commission on which Defendants are members is not a federal agency for the purpose of the Westfall Act and the Federal Torts Claims Act, (the "FTCA"); (2) Defendants are not federal employees; and (3) if they are considered federal employees, Defendants were not acting within the scope of their employment.

Pending before this Court is the Government's motion to dismiss this action for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and a motion to stay discovery until after the court has ruled on the motion to dismiss.  (ECF 3).  As noted, Plaintiffs oppose the Government's substitution as the Defendant, and argue that the Government's motion to dismiss is premature without discovery and an evidentiary hearing.  (ECF 6).  The issues presented in the Government's motion are fully briefed and, therefore, are ripe for disposition.[4]  For the reasons set forth herein, this Court finds that the Government's notice of substitution is proper, discovery on this issue is not required, and the motion to dismiss for lack of subject-matter jurisdiction is granted.

---

Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

[3]      As the substituted defendant, the Government filed all subsequent motions and briefs.

[4]      This Court has considered the Government's motion, (ECF 3), Plaintiffs' response in opposition, (ECF 6), the Government's reply, (ECF 8), and Plaintiffs' sur-reply, (ECF 11).

## BACKGROUND

The facts relevant to the Government's motion to dismiss and notice of substitution are summarized as follows:[5]

> Congress created the United States Semiquincentennial Commission (the "Commission") in 2016 with the passage of the United States Semiquincentennial Commission Act, and tasked it with planning, encouraging, developing, and coordinating the Nation's 250-year anniversary celebrations. Members of the Commission include four members of the United States Senate, four members of the House of Representatives, sixteen private citizens appointed by members of the Senate and House of Representatives, and various members of the President's executive cabinet.

> Plaintiff DiLella was appointed as the Chairperson of the Commission by then President Donald J. Trump and reappointed by President Joseph R. Biden. Plaintiff Giordano was hired by Plaintiff DiLella as the Executive Director of the Commission. Defendants Hohns, Griffin, and Swanson are citizen members appointed to the Commission by congressional representatives.

> Defendants drafted a letter dated October 19, 2018, on Congressman Robert A. Brady's letterhead (the "Brady Letter"), primarily calling into question Plaintiff DiLella's hiring of Plaintiff Giordano as the Executive Director of the Commission. The Brady Letter was sent to Plaintiff DiLella and copied to the other Commission members. Congressman Brady later informed Plaintiffs that he did not assist in the drafting of the letter and was unaware of the letter before it was sent.[6]

> During the first Commission meeting on November 16, 2018, Defendant Hohns raised the same concern about Plaintiff Giordono's hiring that Defendants had raised in the Brady Letter.

---

[5] These facts are gleaned from Plaintiffs' complaint, (ECF 1-1), and the briefs in support of and in opposition to the Government's motion, (ECF 3, ECF 6, ECF 8, ECF 11). Most facts are not disputed, but where disputed, they are construed in Plaintiffs' favor. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006) ("[T]the standard is the same when considering a facial attack under Rule 12(b)(1) or a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

[6] Plaintiffs contend that Defendants fraudulently used Congressman Brady's letterhead. The Government disputes this assertion. Regardless, Plaintiffs concede that their claims do not arise from the creation of the Brady Letter, but rather they rely on the Brady Letter as circumstantial evidence of Defendants' intent.

At a Commission meeting in September 2021, Defendants read aloud prepared speeches accusing Plaintiffs of mismanaging the Commission, wasting public funds, violating governing rules, and cronyism.  Before the meeting, Defendants tipped off a reporter from the *Wall Street Journal* about their plan to read aloud the speeches during the meeting.  Following the meeting, Defendants contacted elected officials and the media, and made the same or similar claims of mismanagement they made during the meeting.

Between March and June 2022, the *Wall Street Journal*, the *Washington Post*, and *Philadelphia Magazine* published articles that included quotes from Defendants Hohns and Griffin, in which they were critical of Plaintiffs.

## DISCUSSION

In the instant motion, the Government supports its substitution for the named Defendants, and moves to dismiss Plaintiffs' complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction.  In opposition, Plaintiffs argue that the Government's substitution was improper, and that additional discovery is necessary before the Court can rule on the Government's motion to dismiss.  Since the resolution of the Government's motion to dismiss is largely dependent on whether the party substitution is proper, the Court will address the notice of substitution first and will consider each of the Government's arguments and Plaintiffs' challenges in turn.

### *The Government's Notice of Substitution*

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  When the Attorney General or his

delegate[7] certifies pursuant to § 2679(d)(2) that a federal employee was acting within the scope of employment, "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act (FTCA)." *Id.* at 230; *see also* § 28 U.S.C. 2679(d)(2).

Here, when the Government removed the case from state court to this Court, the United States Attorney for the Eastern District of Pennsylvania filed a Certification of Scope of Employment (the "Certification") pursuant to 28 U.S.C. § 2679(d), certifying that Defendants were employees of the government acting within the scope of their employment with the Commission at the time of the incidents out of which the claims in the complaint arise. (ECF 1-2). Such a "certification is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment . . . . Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992). For the reasons discussed below, Plaintiffs have not met this burden.

### 1. The Commission is a Federal Agency

In contesting the Government's substitution, Plaintiffs argue that the Commission is not a federal agency. Plaintiffs are mistaken. Under the FTCA, the definition of a "'federal agency' includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." 28 U.S.C. § 2671.

---

[7]    The Attorney General has delegated his authority to certify scope of employment to the United States Attorneys. 28 C.F.R. § 15.4.

In determining whether an entity is a federal agency for purposes of the FTCA, courts consider the following factors: "(1) the federal government's ownership interest in the entity; (2) federal government control over the entity's activities; (3) the entity's structure; (4) government involvement in the entity's finances; and (5) the entity's function or mission." *Mendrala v. Crown Mortg. Co.*, 955 F.2d 1132, 1136 (7th Cir. 1992). "[S]ubstantial federal funding and the important supervisory role played by the government are the most important factors" when determining if an entity is a federal agency. *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 296 n.6 (D.C. Cir. 1977).

Here, the Commission was established by an Act of Congress to "prepare an overall program for commemorating the 250th anniversary of the founding of the United States[.]" United States Semiquincentenial Commission Act of 2016 (the "Commission Act"), Pub. L. No. 114-196, 130 Stat. 686 § 5(a)(1). As noted, members of the Commission include United States Senators, members of the House of Representatives, private citizens appointed by members of the Senate and House of Representatives, and members of the President's executive cabinet. *See id.* § 4(b). The Commission is "required to submit to the President [of the United States] a comprehensive report that includes the specific recommendations of the Commission," *id.* § 5(c), which the President must then submit to Congress with his or her comments and recommendations for the legislature, *id.* § 5(d), and annual reports to Congress reporting the "activities of the commission, including an accounting of funds received and extended during the year covered by the report," *id.* § 9(d). Further, since 2019, the Commission has received over $30 million in federal funding from Congress. *See* Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13, 212 (appropriating $500,000); Further Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, 133 Stat. 2534, 2692 (2019) (appropriating $3,300,000); Consolidated Appropriations Act, 2021,

6

Pub. L. No. 116-260, 134 Stat. 1182, 1483 (2020) (appropriating $8,000,000); Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 408 (2022) (appropriating $8,000,000); Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 4819 (2022) (appropriating $15,000,000).

Based on the factors referenced above, this Court finds that the structure, function and mission of the Commission, and the federal government's general oversight and control over the Commission's activities and finances, support its conclusion that the Commission is a federal agency. This Court's opinion is further reinforced by a recent persuasive ruling in the matter of *Burchard, et al. v. America 250 Foundation, et al.*, No. 22-0497 (D.D.C.). There, the court concluded that United States Semiquincentennial Commission is a federal agency for purposes of the False Claim Act and the District of Colombia Human Rights Act, and reasoned:

> The Court . . . finds that the Commission is an instrumentality of the federal government. The [C]ommission was created by statute to perform a function on behalf of the government, to be funded through a combination of appropriated, earned and private funds, and given the power to raise those private funds by the statute. Its members are appointed by Congress. It is obligated to report to both the legislature and executive . . . .
>
> Moreover, the Commission remains accountable to Congress, which has full authority to supervise or even disband it. Finally, Plaintiffs' argument that the Commission does not enjoy sovereign immunity because Congress does not mention it in the statute gets, in this Court's view, the burden backward. Federal sovereign immunity must be unequivocally waived and not bestowed.

(Tr., ECF 14, at pp. 12-13). As noted, this Court finds, as did the *Burchard* Court, that based on the facts surrounding the Commissions' creation, funding, supervision, and purpose, the Commission meets the criteria for and, therefore, is a "federal agency" for the purposes of the Westfall Act and the FTCA.

Plaintiffs argue, however, that the Commission is not an agency for purposes of the FTCA because the Act creating the Commission does not contain language expressly designating the Commission as an agency or its members as federal employees. In support, Plaintiffs point to other federal commissions that were created by statutes that contain express language designating the entity as an agency and/or its members as federal employees for the purpose of the FTCA.[8] Plaintiffs further argue that by omitting such language from the Commission Act, Congress did not intend to provide the Commission FTCA immunity and without express language, a court cannot determine a commission is an agency or that its members are federal employees. This Court disagrees.

As argued by the Government, "[n]ot every silence is pregnant; *expressio unius est exclusio alterius* is therefore an uncertain guide to interpreting statutes." *State of Ill. Dep't of Pub. Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n.23 (1983)). Numerous statute-created entities (including the Commission at issue here) have been deemed federal agencies in the absence of express statutory language. *See, e.g.*, *Expeditions Unlimited*, 566 F.2d at 296 (deciding the Smithsonian Institution is a government agency and, thus, its employees share immunity with the Government where there was no statutory language designating it as such); *Gen. Pub. Utils. Corp. v. United States*, 745 F.2d 239 (3d Cir. 1984) (concluding that claims against the Nuclear Regulatory Commission were barred by the discretionary function exception of the Federal Tort Claims Act where the enacting statute lacked

---

[8] One of the statutes that Plaintiffs' point to is the National Gambling Impact Study Commission Act, Pub. L. No. 105-30, 111 Stat. 248 (1997). Plaintiffs specifically highlight language in this statute designating the commission as a federal agency and its members as employees of the government. Plaintiffs contend that without similar language the Commission here cannot be deemed a federal agency. In describing this statute, however, Congress expressly indicated that it "***shall not*** be construed to imply that ***any commission*** is not a 'Federal agency' or that any of the members or personnel of a commission is not an 'employee of the Government' for purposes of sections 1346(b) and 2401(b) and chapter 171 of title 28, United States Code." *See* Pub. L. No. 105-30 § 2, 111 Stat. 248 (1997) (emphasis added).

8

agency and employee language); *Reminga v. United States*, 631 F.2d 449 (6th Cir. 1980) (analyzing negligence claims against the Federal Aviation Administration and the Federal Communications Commission under the FTCA, despite their enacting statutes missing express FTCA immunity language).

The Government also notes that the FTCA has been found to apply to many federal commissions that were created by statutes enacted prior to the FTCA's enactment and, thus, did not include the FTCA immunity language. For example, the Government points to the Nuclear Regulatory Commission, the Federal Communications Commission, the Federal Trade Commission, and the Securities and Exchange Commission. *See e.g.*, *Berkovitz v. United States*, 486 U.S. 531, 538 n.4 (1988) (looking to the FTCA's legislative history to determine its applicability to the Federal Trade Commission and the Security and Exchange Commission). Here, the Commission Act's lack of language expressly designating the Commission as a federal agency or its members as federal employees does not determine its status as an agency. Rather, consistent with case law, this Court considered the Commissions' creation, funding, supervision, and purpose, and after such consideration finds that for the purposes and protection of the FTCA, the Commission is a federal agency.

### 2. *Defendants are Employees of the Commission*

Plaintiffs also argue that Defendants are not employees of the Commission because they are unpaid "private citizen" members of the Commission. Neither of these facts, however, are determinative of whether they are federal employees. Defendants' designation as the "private citizen" members does not speak to their role on the Commission since the Commission Act requires sixteen "private citizen" members, in addition to the congressional and executive members of the Commission.

Plaintiffs' argument regarding Defendants' lack of pay as evidence of their non-employee status is, also, without legal support. Indeed, Section 2671 explicitly defines employees of the government as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether **with or without compensation**." 28 U.S.C. § 2671 (emphasis added). Thus, this Court rejects Plaintiffs' argument as unpersuasive and, for the purposes of the Westfall Act and the FTCA, finds that the named Defendants, as employees of the Commission, are federal government employees.

*3. Defendants were Acting within the Scope of their Employment*

Lastly, Plaintiffs challenge whether Defendants were acting within the scope of their employment when they engaged in the conduct alleged in the complaint. Whether an employee is acting within the scope of his employment is determined by the law of the place where the incident occurred. *CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008). Here, the parties agree that Pennsylvania law applies because the conduct at issue allegedly occurred in this Commonwealth. Under Pennsylvania law, "conduct is within the scope of employment if but only if: (a) it is the kind the employee is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." *Id.* (citing Restatement (Second) of Agency § 228);[9] *see also id.* at 146 (applying these elements in the context of the FTCA). When determining scope of employment, "[i]t is the state of the servant's mind which is material." Restatement (Second) of Agency § 235 cmt. a.

---

[9] "Pennsylvania has accepted the Restatement (Second) of Agency's definition of conduct within the scope of employment." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (internal citations omitted).

As previously noted, the duties of the Commission, in general, are to "prepare an overall program for commemorating the 250th anniversary of the founding of the United States and the historic events preceding that anniversary; and plan, encourage, develop, and coordinate observances and activities commemorating the historic events that preceded, and are associated with, the United States Semiquincentennial." Commission Act, Pub. L. No. 114-196, 130 Stat. 686 § 5(a). To achieve these objectives, the Commission is directed to convene meetings, coordinate with State and local bodies, submit reports to the President and Congress, and may designate special committees. *Id.* § 5(b). The Commission shall also "consult and cooperate with, and seek advice and assistance from, appropriate Federal agencies, state and local public bodies, learned societies, and historical, patriotic, philanthropic, civic, professional, and related organizations. *Id.* § 6(a).

In their contention that Defendants acted outside the scope of employment, Plaintiffs rely on the following conduct: (1) Defendants' comments and speeches made at Commission meetings held on November 16, 2018, and in September 2021; (2) Defendants' communications with elected officials; and (3) Defendants' speech to members of the media.[10] For the sake of clarity, each conduct will be addressed separately.

*(a) Defendants' Speech at Meetings*

Plaintiffs allege that Defendants' statements criticizing Plaintiff DiLella's hiring of Plaintiff Giordano and the management of the Commission made at the November 16, 2018, and

---

[10] Plaintiffs also argue that Defendants' drafting and sending of the Brady Letter was outside their scope of employment. Plaintiffs, however, have conceded that their claims "do not arise from the falsified *creation* of the Brady letter . . . . [So] [t]he [B]rady [L]etter is thus not the defamation itself." (Defs.' Resp., ECF 6-2, at pp. 23-24).

September 2021 meetings were defamatory.  Plaintiffs argue that Defendants were acting outside their scope of employment when they made these statements during the two Commission meetings.

Specifically, in the complaint, Plaintiffs allege that "[d]uring the first Commission meeting in Philadelphia on November 16, 2018, [Defendant] Hohns again raised the false statements in the Brady Letter, expressly accusing Plaintiff DiLella of improprieties in connection with hiring [Plaintiff] Giordano as the Executive Director."  (Compl., ECF 1-1, at ¶ 58).  Plaintiffs further allege that at the September 2021 meeting Defendants "interrupt[ed] [Plaintiff] DiLella so [Defendants] could each read from prepared speeches, during which they maliciously disparaged [Plaintiffs] DiLella and Giordano by falsely accusing them of mismanaging the Commission and Foundation, wasting public funds, violating governing rules, and cronyism." (*Id.* at ¶ 65).  "During their speeches . . . Defendants also demanded an independent audit into the finances of the Commission and the Foundation and called for a Congressional investigation." (*Id.* at ¶ 67).  The Government argues that comments made by Defendants at these Commission meetings clearly fall within the scope of Defendants' employment.

Relying on the Restatement (Second) of Agency provision, this Court finds that these alleged comments made during the actual committee meetings were made by Defendants within the scope of their employment.  As alleged, these comments were about the Commission's management, and are the kind of comments the Commissioners were employed to make, were clearly made within the authorized time and space limits, and were "actuated, at least in part, by a purpose to serve the master," i.e., the Commission.  *See* Restatement (Second) of Agency § 228; *see also* discussion *infra* pp. 14-16 (discussing when even defamatory language can be within the scope of employment).  Accordingly, the statements made during the committee meetings (even if defamatory) fall within the scope of employment.

12

*(b) Defendants' Speech to Elected Officials*

Plaintiffs allege that Defendants' statements to elected officials that Plaintiffs were violating their fiduciary duties were defamatory in nature.  In its motion, the Government argues that these statements were within the scope of Defendants' employment, regardless of the alleged defamatory nature.  Notably, Plaintiffs offer no argument in response to the Government's contention that this speech falls within Defendants' scope of employment.  Regardless, this Court agrees with the Government's argument.

Comments to elected officials about the governance of the Commission are clearly within the scope of Defendants' employment.  Importantly, statements made to elected officials were the "same or similar" to the ones made during the September 2021 Commission meeting, calling the Commission's management into question.  Indeed, the Commission Act requires the Commission to report to Congress and to coordinate with other agencies and organizations.  *See* Commission Act, Pub. L. No. 114-196, 130 Stat. 686 § 5(c)-(d).  As such, Defendants' alleged communications with elected members of Congress about the management of the Commission is the type of conduct Defendants are expected to perform.  Commission members do not have specific work hours nor a permanent office, as they only serve on the Commission part-time, and Plaintiffs fail to allege any conduct by Defendants that would suggest their actions were outside the Commission members' authorized space and time limits.  Finally, since the alleged conduct is directly related to the management of the Commission, Defendants' communications with elected officials was actuated, at least in part, by a purpose to serve the Commission.  Accordingly, Defendants' comments to elected officials were the type they were employed to make, they were made within the authorized time and space limits of the Commission, and they were actuated at least in part to

serve the Commission, thus, such communications were within the scope of Defendants' employment. *See* Restatement (Second) of Agency § 228.

(*c*) *Defendants' Speech to the Media*

In the complaint, Plaintiffs allege that Defendants' statements to newspaper reporters and other media that eventually appeared in various written publication about the Commission were also defamatory. The Government reiterates that these comments were made while Defendants were acting within the scope of their employment. In response, Plaintiffs argue that these statements fall outside the scope of Defendants' employment. Critical to this argument is whether the conduct in question — speaking with the media — is (1) the "kind [the employee] is employed to perform;" (2) whether it "occur[ed] substantially within the authorized time and space limits;" and (3) whether it was "actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228(1).

Although nothing in the Commission Act directs Commission members to talk or to not talk with the media, the Commission is inherently public facing since its purpose is to "plan, encourage, develop, and coordinate" a national commemoration of the United States' 250th anniversary. Commission Act, Pub. L. No. 114-196, 130 Stat. 686 § 5(a)(2). Specifically, the Commission is charged with "providing for the observance and commemoration of the 250th anniversary of the founding of the United States and related events through local, State, national, and international activities." *Id.* § 2(b). Plaintiffs allege that Defendants "tipped off a reporter from the *Wall Street Journal* about their intention to read their defamatory, scripted speeches during the September 2021 meetings, so that the reporter would be present," (Compl., ECF 1-1, at ¶ 66), and Defendants Hohns and Griffin, also spoke with and were quoted by three journalists

making the "same false and defamatory claims of mismanagement against [Plaintiffs]," (*Id.* at ¶ 69).

### (i) Is speaking to the media the kind of conduct Defendants were employed to perform?

Plaintiffs argue that because it is not specifically listed as a duty in the Commission Act, speaking to the media is not within the Commission members' scope of employment. Plaintiffs further argue that even if speaking with the media falls within the conduct that Defendants were employed to perform, engaging in defamatory speech about the Commission to the media does not fall within the scope of their employment. Plaintiffs are mistaken. Courts have repeatedly rejected this latter argument. For example, in *Brumfield v. Sanders*, a correctional officer brought state tort claims against his coworkers, alleging that they made false statements in written affidavits and oral statements during a Bureau of Prisons Office of Internal Affairs investigation. 232 F.3d 376, 382 (3d Cir. 2000). The United States Court of Appeals for the Third Circuit (the "Third Circuit") concluded that the defendants' conduct was within the scope of employment even if the alleged statements were false. *Id.* at 381. The *Brumfield* Court concluded that "an act, although forbidden or done in a forbidden manner, may be within the scope of employment." *Id.* In so holding, the Third Circuit affirmed the District Court's rejection of the plaintiff's argument that "unlawful acts or acts contrary to orders, policies, procedures and standards . . . [are] outside the scope of employment and therefore not protected by the Westfall Act." *Id.*; *see also Ismael v. Ali*, 276 F. App'x 156, 160 (3d Cir. 2008) (holding that professors were acting within the scope of employment when they wrote a series of letters allegedly containing false statements about the improper handling of funds collected for a conference); *Berkeley-Dorchester Cntys. Econ. Dev. Corp. v. U.S. Dep't of Health & Hum. Servs.*, 395 F. Supp. 2d 317, 323-24 (D.S.C. 2005) (concluding that allegedly false and defamatory statements made to the press were within a

15

government official's scope of employment when made in his capacity as an official tasked with overseeing a program).  Based upon these sound reasoned decisions, this Court finds that the fact that Defendants are alleged to have engaged in defamatory speech with respect to Plaintiffs does not remove this conduct from their scope of employment.  Further, given that the Commission's purpose is to plan a public event and in doing so to communicate with the public, speaking with members of the media, as commissioners of a public facing and serving commission, Defendants' conduct is the kind of conduct the commissioners are employed to perform, consistent with the Restatement (Second) of Agency § 228.

### (ii) Is speaking to the media within the authorized time and space limits of Defendants' employment?

Having determined that speaking with the media is conduct of the kind Defendants are employed to perform, this Court must also determine whether Defendants' discussions with the media "occur[ed] substantially within the authorized time and space limits."  Restatement (Second) of Agency § 228(1)(b).  While there are not specifically defined "time and space limits" for the commissioners, the Government argues, and this Court agrees, that the commissioners' comments to the media are akin to comments made by members of Congress to the media.  As such, numerous courts have held that a member of Congress' communications with the media fall within the time and space limits of the member's employment.  For example, in *Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009), the United States Court of Appeals for the District of Columbia Circuit held that a member of Congress was acting within the scope of employment when he made allegedly false and defamatory statements to the media about the role of a United States Marine squad in the death of Iraqi civilians.  In *Sharratt v. Murtha*, a panel of the Third Circuit reached a similar scope of employment conclusion when considering identical facts. 437 F. App'x 167 (3d Cir. 2011);  *see also Mac Issac v. Cable News Network, Inc.*, 2023 WL 6847101, at *5 (D. Del. Oct. 17, 2023)

(upholding the Attorney General's certification that Representative Adam Bennett Schiff's CNN interview that allegedly included deceptive statements was within the scope of his employment). Under the facts alleged, this Court finds that Defendants' communications with the media about the Commission fall within the time and space limits of their employment.

Nonetheless, Plaintiffs rely on the opinion of the Erie County Court of Common Pleas in *Weisenbach v. Project Veritas, et al.*, No. 10819-2021 (Pa. Ct. Com. Pl. filed July 15, 2022), to argue otherwise. This reliance, however, is misplaced. In *Weisenbach*, the court determined that a postal worker's statements to a media source that the Erie Pennsylvania Postmaster was committing voter fraud by backdating mail-in ballots were not within the scope of his employment. *Id.* at 1, 28. The court found that the postal worker's job description gave him no role in voting or the election, beyond delivering and collecting the mail. *Id.* at 20-21.

Here, the statements made by Defendants were about the management of the Commission and the planning of the Semiquincentenial celebration. These communications were more directly related to their role as commissioners contrary to the postal worker's conduct. As such, Defendants are more akin to the members of Congress discussed in the cases above, than to the postal worker in *Weisenbach*. Defendants were appointed to the Commission, are representatives of the public, and work alongside Senators, Representatives, and members of the Executive branch. Defendants sit on a public facing, congressionally created commission, in a representative capacity. Thus, Defendants' discussions with the media occurred substantially within the authorized time and space limits of their employment, consistent with the Restatement (Second) of Agency § 228.

> *(iii) Was Defendants' speech with the media actuated, at least in part, by a purpose to serve the master?*

The final element of the scope of employment analysis is whether the actions were "actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency §

228(1)(c). Similar to their argument with respect to element (a), the conduct being "the kind [the employee] is employed to perform," Plaintiffs argue that Defendants' alleged defamatory and/or critical communications about the Commission cannot be deemed intended to serve the master. Plaintiffs' argument in this regard is, again, misplaced.

Under Pennsylvania law, even unauthorized acts may be within the scope of employment "if they are clearly incidental to the master's business." *Brumfield*, 232 F.3d at 381 (citing *Shuman Estate v. Weber*, 276 Pa. Super. 209, 216, (1980)). Further, "the mere existence of personal motivation is insufficient" to make an employee's acts outside the scope of employment. *Id.* at 380. "Extensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment—including specific allegations of defamation or of potentially criminal activities—does not take that conduct outside the scope of employment." *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018); *see also Brumfield*, 232 F.3d at 381 (finding that an employer's liability "may extend even to intentional or criminal acts committed by the servant" and acts that are "forbidden or done in a forbidden manner") (internal quotation marks omitted). However, "there must still be some relationship or nexus between the tortious conduct and the employee's responsibilities for it to be an outgrowth of a job-related controversy." *Trump v. Carroll*, 292 A.3d 220, 232 (D.C. 2023).

Here, Defendants are alleged to have invited a journalist from the *Wall Street Journal* to a Commission meeting where Defendants made the allegedly defamatory and/or critical comments about the Commission, and Defendants Hohns and Griffin were later quoted in articles published by the *Wall Street Journal*, the *Washington Post*, and *Philadelphia Magazine*. Defendants' media-reported comments were the "same or similar" to those comments Defendants made at the

Commission meetings, criticizing the Commissions' governance, including its vision and mismanagement. As highlighted in Plaintiffs' complaint, Defendants were quoted as saying:

1. "'We've suffered through four years of these antics with no vision at all for 2026,' said Commissioner chief executive Andrew Hohns, chief executive of Philadelphia investment firm Newmarket Capital. 'There has been little to no focus on the hard work of historic preservation, capital and community investment, and planning for the celebration or building its legacy.'" [*Wall Street Journal*, March 19, 2022]

2. "'I'm not at all comfortable with the way things stand,' Hohns said. 'This is a very significant abuse of this public institution.'" [*Washington Post*, April 22, 2022]

3. "Commissioner Noah Griffin Jr., . . . [said] [n]ow, America 250 is nothing but a 'branding operation,' according to Griffin, and Biden must act to ensure it is effectively run. 'Each generation's ceiling is the next generation's floor,' Griffin said. 'I'm not willing to turn it over to folks that are not willing to understand and appreciate that. Somebody has to continue to make this commission what it should be.'" [*Washington Post*, April 22, 2022]

4. "I've [Hohns] been spending four years dealing with almost a tragicomic degree of corporate misgovernance." [*Philadelphia Magazine*, June 27, 2022]

5. "According to Hohns, the commission, in contravention of its own bylaws, has never approved any of the foundation's contracts or annual budgets, despite the fact that the foundation has received, through the federal commission, nearly $20 million in appropriations." [*Philadelphia Magazine*, June 27, 2022]

6. "Hohns claims DiLella is running the commission like it's his personal business. 'I think it's our business,' Hohns says, 'as in the people's business.'" [*Philadelphia Magazine*, June 27, 2022]

7. "Dan just shuts everybody down," Griffin says. "It's not his commission; it's the country's. He's running it like Trump tried to run the damn government." [*Philadelphia Magazine*, June 27, 2022]

(Compl., ECF 1-1, at pp. 14-15).

As described above, Defendants were selected as citizen members of the Commission, to include the public's voice in the Commission's work. All the published comments alleged in the complaint express Defendants' views on the effective or ineffective running of the Commission. Moreover, the context to the alleged comments evidence Defendants' subjective view that the Commission was being mismanaged and the purpose of the Commission — planning the Semiquincentenial celebration — was not being executed effectively or efficiently.

Further, as evidenced by the quotes in the referenced articles, Defendants view their role on the Commission as servants of the public and that their duties as Commission members relate to the successful planning of the United States' 250th anniversary celebration for the public. Defendant Hohns is quoted saying, "[Plaintiff] DiLella is running the commission like it's his personal business. 'I think it's *our* business,' . . . 'as in the people's business[,]'" and Defendant Griffin is quoted saying, "[i]t's not [Plaintiff DiLella's] commission; it's the country's." (Compl., ECF 1-1, at Ex. E). These remarks appear to support the contention that Defendants' purpose in speaking with the media was to gain attention and ensure the proper management of the Commission. Even if not explicitly within their duties, or even if contrary to the Commission policy, there was sufficient nexus between Defendants' actions and their purpose as representatives of the public on the Commission.

In sum, this Court finds that Plaintiffs have failed to meet their burden of rebutting the Government's certification, and that Defendants were acting within the scope of their employment as defined by the Restatement (Second) of Agency § 228. Accordingly, the Government's substitution for Defendants pursuant to 28 U.S.C. § 2679(d)(2) is proper.

### *Motion to Stay Discovery*

The Government asks this Court to stay discovery until after the Court has ruled on the motion to dismiss.  In response to the Government's motion regarding substitution and discovery, Plaintiffs argue that this Court should reserve adjudicating the issue of the substitution and allow Plaintiffs to conduct limited discovery on whether Defendants were acting in the scope of their employment.  Contrary to Plaintiffs' suggestion, however, "there is no right to even limited discovery in a Westfall Act case unless and until a plaintiff alleges sufficient facts to rebut the Government's certification."  *Wuterich*, 562 F.3d at 382; *see also Melo v. Hafer*, 13 F.3d 736, 742 (3d Cir. 1994) (holding that "***if*** there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing, ***if necessary***" (emphasis added)); *Lackro v. Kao*, 748 F. Supp. 2d 445, 451-52 (E.D. Pa. 2010) ("a plaintiff is not entitled to even limited discovery following a U.S. Attorney's certification unless he or she demonstrates specific facts which rebut the certification").

As addressed above, this Court finds that no genuine issue of material fact exists and that Plaintiffs have not presented sufficient facts to rebut the Government's certification that Defendants are federal employees and that their conduct falls within the scope of their employment.  Having failed to do so, Plaintiffs are not entitled to discovery.  Accordingly, Plaintiffs' request for limited discovery is denied.

### *Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Having found that the Government has been properly substituted for Defendants, this Court turns to the Government's motion to dismiss for lack of subject-matter jurisdiction.  In its motion, the Government argues that this Court lacks subject-matter jurisdiction over Plaintiffs' claims because the claims are precluded by sovereign immunity.  This Court agrees.

A Rule 12(b)(1) motion to dismiss challenges the existence of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). As the party invoking this Court's jurisdiction, Plaintiffs bears the burden of proving that the requisite jurisdictional requirements are met. *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). "[W]hen there is a fact question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings . . . '[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case.'" *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Therefore, this Court is free to consider evidence outside the pleadings to resolve factual issues bearing on the jurisdictional issue. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

A federal court must dismiss any claim over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is axiomatic that "the United States, as sovereign, is immune from suit" unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012). Congress can only waive sovereign immunity if it does so expressly by statute. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Any party attempting to sue the United States bears the burden of proving that Congress has waived sovereign immunity." *Alnor Check Cashing v. Katz*, 821 F. Supp. 307, 311 (E.D. Pa. 1993); *see also Beeman v. United States*, 2013 WL 1314467, at *2 (W.D. Pa. Mar. 28, 2013) ("It is a plaintiff's burden to establish that an unequivocal waiver of sovereign immunity exists by pointing to an act of

Congress that specifically authorizes a court to entertain a specific claim against the Federal government." (internal quotation marks omitted)).

While the FTCA provides a limited waiver of the Government's sovereign immunity, it expressly does not waive sovereign immunity with respect to claims against the Government "arising out of . . . libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The language that a plaintiff uses to characterize claims is not determinative of whether they fall within the exception, and the "defamation exception to the FTCA [can] not be avoided by attaching a different label to the tort." *Brumfield*, 232 F.3d at 382-83 (internal quotation marks omitted).

As noted, Plaintiffs allege claims for defamation (Count I), false light (Count II), tortious interference with contractual relations (Count III), and civil conspiracy (Count IV), against Government, now the Defendant. (*See* ECF 1-1). Clearly, Plaintiffs' claim for tortious interference with contractual relations (Count III) falls squarely within the FTCA's express reservation of sovereign immunity. Though Plaintiffs' claims for defamation and false light (Counts I and II) are not referenced in the FTCA's express reservation of sovereign immunity, numerous courts have held that these claims are also subject to the FTCA's sovereign immunity reservation since they arise out of libel and slander, for which the Government's limited waiver of sovereign immunity is excluded under the FTCA. *See Brumfield*, 232 F.3d at 382 ("[D]efamation suits against the United States are prohibited."); *Bohnenkamp v. Whisterbarth*, 2021 WL 1600477, at *7 (W.D. Pa. Apr. 23, 2021) ("Courts have also held that the intentional tort of false light invasion of privacy arises out of libel and slander and cannot support liability against the Government." (citing *Johnson v. Sawyer*, 47 F.3d 716, 732 n.34 (5th Cir. 1995) ("'[F]alse light' invasion of privacy essentially amounts to libel, slander, or misrepresentation."))); *Small v. United*

23

*States*, 333 F.2d 702, 704 (3d Cir. 1964) ("The Federal Torts Claims Act specifically exempts from its application any claims arising out of . . . interference with contract rights. The exemption extends not only to an action for the unlawful interference with existing contracts but also to actions for unlawful interference with prospective contractual relations." (internal quotation marks and citations omitted)). This Court agrees an finds that the Government's sovereign immunity extends to Plaintiffs' claims for defamation and false light.

With respect to Plaintiffs' civil conspiracy claim (Count IV), it is well-settled that "a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). Here, the alleged separate underlying torts are defamation, false light, and tortious interference with contractual relations. As indicated, the Government is immune from Plaintiffs' underlying torts; thus, Plaintiffs cannot assert a conspiracy claim against the Government premised on such torts. In addition, as the Government has correctly argued, courts have recognized that it is impossible for federal agencies and their employees to engage in a civil conspiracy. *See, e.g.*, *Radford v. United States*, 264 F.2d 709, 710 (5th Cir. 1959) ("[T]he United States is by its nature incapable of entering into the conspiracy charged."); *Bowling v. United States*, 740 F. Supp. 2d 1240, 1250-53 (D. Kan. 2010) (finding that plaintiff's civil conspiracy claim was not actionable under the FTCA because if acting within the scope of employment, an employee's actions are those of the corporation, and a corporation cannot be guilty of conspiracy with itself); *Vaupel v. United States*, 2011 WL 2144612, *16 (D. Colo. May 12, 2011) (explaining that since "the United States is the only proper Defendant in relation to FTCA claims . . . [and] because the United States is treated as an individual, under the applicable law, it is impossible for such an 'individual' to engage in a civil conspiracy with itself" (internal citation omitted)).

24

Because Plaintiffs have not met their burden of establishing the Government's waiver of sovereign immunity on any of their claims, this Court lacks subject-matter jurisdiction over Plaintiffs' claims.[11] Accordingly, the Government's motion to dismiss is granted.

## CONCLUSION

For the reasons set forth, this Court finds that:

1. The Government's substitution for the named individual defendants is proper. Accordingly, Defendants Hohns, Griffin, and Swanson are dismissed, with prejudice, from this action and the United States is the named Defendant in this matter;

2. The Government's Rule 12(b)(1) motion to dismiss is granted as this Court lacks subject-matter jurisdiction over Plaintiffs' claims because the claims are precluded pursuant to the Government's sovereign immunity under the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(h); and

3. Since the motion to dismiss is granted, the Government's motion to stay discovery is denied as moot.

An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.*

---

[11] Further, "[t]he FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency and the claim has been finally denied. The final denial requirement is 'jurisdictional and cannot be waived.'" *Lightfoot v. United States*, 564 F.3d at 626-27 (internal quotation marks omitted). Nowhere in the complaint or their briefs do Plaintiffs allege having exhausted administrative remedies. Accordingly, this Court lacks jurisdiction to consider Plaintiffs' claims under the FTCA.